**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

REBECCA PROCTOR; REX BROOKS;
JOHN DONOVAN; ROBERT NEEDLES
on behalf of Siliconix, Inc.
themselves and on behalf of all
minority shareholders of Siliconix,
Inc., similarly situated,
*Plaintiff-Appellant,*

v.

VISHAY INTERTECHNOLOGY INC.;
VISHAY TEMIC SEMICONDUCTOR
ACQUISITION HOLDINGS
CORPORATION; SILICONIX, INC.;
ERNST & YOUNG LLP; FELIX D.
ZANDMAN,
*Defendants-Appellees.*

No. 07-16527

D.C. No.
CV-06-04134-JF

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeremy D. Fogel, District Judge, Presiding

Argued and Submitted
February 10, 2009—San Francisco, California

Filed October 9, 2009

Before: David R. Thompson, Marsha S. Berzon, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Berzon

14495

## COUNSEL

Maxwell M. Blecher and James Robert Noblin, Los Angeles, California, and James A. Hennefer, San Francisco, California, for the plaintiffs-appellants.

Peter A. Wald and David M. Friedman, San Francisco, California, and J. Andrew Heaton, Washington, DC, for the defendant-appellee Ernst & Young LLP.

Alan R. Friedman and Jonathan M. Wagner, New York, New York, and Daniel H. Bookin and Dhaivat H. Shah, San Francisco, California, for the defendants-appellees Vishay Intertechnology, Inc., et al.

## OPINION

BERZON, Circuit Judge:

We consider a set of issues concerning the application of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Pub. L. No. 105-353, 112 Stat. 3227, codified in relevant part at 15 U.S.C. § 78bb (amending the Securities Exchange Act of 1934).[1] SLUSA provides for the removal to federal court and then dismissal of certain securities fraud cases, while allowing others to go forward in state court. In this case, the scope of both SLUSA's coverage and of the so-called "Delaware carve-out" exception is at stake, as is the delicate relationship between state and federal courts considering securities fraud questions.

More specifically, at the time this action was first filed in state court, plaintiffs Rebecca Proctor, Rex Brooks, John Donovan, and Robert Needles (collectively, "Proctor") were minority shareholders in Siliconix, Inc. ("Siliconix"). They brought suit against Siliconix's majority shareholder, Vishay

---

[1]SLUSA amended both the Securities Act of 1933 and the Securities Exchange Act of 1934 "in substantially identical ways." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 82 n.6 (2006). We rely on the amendments to the latter, as did the parties and the district court, but throughout this opinion treat case law interpreting amendments to each of the statutes as transferable.

Intertechnology, Inc., and other related defendants, alleging that over the course of several years Vishay misappropriated Siliconix's assets and breached its fiduciary duties to Siliconix and to the other shareholders. Vishay later acquired all the outstanding minority shares in Siliconix through a short-form merger, allegedly at a price unfair to Proctor and the other minority shareholders, and Proctor amended her complaint to include allegations related to this merger.

Proctor's suit thus began as a relatively straightforward class action and derivative shareholders' suit, stating claims under California law. The filing and settlement of a separate class action lawsuit against Vishay in the Delaware Court of Chancery, combined with subsequent changes to Proctor's own pleadings, have complicated matters substantially. Reflecting these developments, the federal district court held that Proctor's suit was properly removed to federal court under SLUSA, but then held that the suit was barred by an injunction filed against the plaintiffs in the Delaware Court of Chancery and so could not proceed.

We affirm in part, reverse in part, and remand. We agree with the district court that Proctor's suit was subject to removal under SLUSA and that removal was timely and procedurally proper. We affirm the district court's dismissal of Proctor's second claim on the alternative ground that it was precluded by SLUSA. But we reverse the district court's order granting Vishay's motion to dismiss and Ernst & Young's motion for summary judgment, because the district court erroneously gave effect to the Delaware injunction. Once Proctor's second claim was dismissed, the district court was required to remand the case to state court.

## BACKGROUND

Siliconix was a publicly owned semiconductor manufacturer incorporated in Delaware and headquartered in Santa Clara, California. Vishay, a manufacturer of electronic com-

ponents, became Siliconix's majority shareholder in 1998, when Vishay acquired control over 80.4% of Siliconix's shares. The remaining 19.6% of Siliconix's shares were held by approximately 600 minority shareholders, including Rebecca Proctor and the other named plaintiffs in this action.

Vishay made a tender offer to the minority shareholders in 2001, but the offer was not supported by a majority of the minority shareholders. According to the plaintiffs' Second Amended Complaint, after the failure of its first tender offer, Vishay "had strong incentives . . . to drain assets from Siliconix," because so doing would both enrich Vishay and "keep the price of the remaining 19.6% of Siliconix stock as low as possible, thus reducing the cost of any future acquisition of the remaining Siliconix shares by Vishay."[2] The complaint goes on to allege that Vishay did in fact take various actions that appropriated or depleted Siliconix's assets while enhancing Vishay's financial position.

Concerned about Vishay's actions as Siliconix's majority shareholder, the plaintiffs filed a complaint in California Superior Court on August 12, 2002, naming Vishay, its subsidiaries, and its chief executive officer Felix Zandman as defendants (collectively, "Vishay"). Plaintiffs pleaded two claims for relief: (1) a derivative shareholder claim on Siliconix's behalf for breach of fiduciary duty and waste of corporate assets, and (2) a class action claim on behalf of two classes of minority shareholders for breach of fiduciary duty. The complaint also named Vishay's auditor, Ernst & Young, LLP, as a defendant, alleging that after Ernst & Young became Siliconix's auditor at Vishay's initiative, the auditing firm conspired to hide Vishay's misappropriations from the minority shareholders and the SEC.

---

[2]Many of the facts alleged by the plaintiffs are disputed. We have no occasion to resolve any factual disputes here, but instead take the plaintiffs' allegations as true.

After filing and service, proceedings in the California Superior Court were stalled for over two years while the plaintiffs sought "to obtain corrective action" via "communications with Siliconix's counsel, officers and directors, and . . . formal requests under the Federal Securities Acts and regulations to Siliconix." These attempts failed. In January 2005, the plaintiffs filed a First Amended Complaint containing more detailed factual allegations and exhibits regarding Vishay's alleged unlawful actions.

In March 2005, Vishay announced a plan to make a tender offer of 2.64 shares of Vishay common stock for each share of Siliconix stock, an offer later increased to 2.90 Vishay shares per Siliconix share. Some of the minority shareholders believed that the tender offer price was unfairly low. Under Delaware law, however, if Vishay was able to obtain through such a tender offer enough shares of Siliconix stock to hold more than 90% in all, Vishay could execute a "freeze-out" or "short form" merger, forcing the sale of any remaining shares to Vishay. *See* 8 Del. C. § 253.

Shortly after the tender offer announcement, several class-action shareholder suits against Vishay, later consolidated, were filed in the Delaware Court of Chancery, all alleging that the tender offer was unfair and that Vishay had breached its fiduciary duties to the minority shareholders. *See In re Siliconix, Inc. Shareholders Litig.*, C.A. No. 1143-N (Del. Ch. filed Apr. 18, 2005). The class representatives in the Delaware litigation soon reached an agreement in principle with Vishay to settle the class action in return for additional disclosures and an increase in the tender offer share price from 2.90 shares of Vishay stock per Siliconix share to 3.075. The parties executed a Memorandum of Understanding with Vishay late in April 2005, and the final settlement agreement was filed with the Delaware Court of Chancery in September. The stipulation of settlement filed with the chancery court specified that the Delaware class action should be dismissed with prejudice and provided for the release of liability ("the

Release") as to a broad swath of other existing and potential claims:

> Any known or unknown claims that have been, could have been, or in the future can or might be asserted in any court . . . by on or behalf of any member of the class, whether individual, class, derivative, representative, legal, equitable, or any other type or in any other capacity against defendants or any of their . . . affiliates or subsidiaries and each and all of their respective past, present or future officers, directors, stockholders, principals . . . employees, attorneys, financial or investment advisors, insurers, consultants, accountants . . . advisors or agents, heirs, . . . predecessors, successors and assigns (collectively, the "Released Persons") which have arisen, arise now or hereafter may arise out of or relate in any manner to the allegations, facts, events, transactions, acts, occurrences, statements, representations, omissions or any other matter whatsoever set forth in or otherwise related, directly or indirectly to (i) the allegations in the complaints in the Action, (ii) the Tender Offer (including all amendments and supplements) (iii) the Short-Form Merger, or (iv) the fiduciary obligations or disclosure duties of any of the Released Persons in connection with the Tender Offer of Short-Form Merger, but excluding any claims to enforce the Settlement or any claims by Siliconix stockholders for appraisal pursuant to 8 Del. C[ode] § 262, are hereby released, discharged and settled . . . .

Meanwhile, Vishay's tender offer closed in May after attracting enough sales of shares to allow the short-form merger, with the result that each remaining Siliconix share was converted into the right to receive 3.075 Vishay shares.

The Delaware court issued an order and final judgment in October 2005. The order certified a class under Court of

Chancery Rules 23(b)(1) and (b)(2) as "consisting of all record and beneficial owners of the common stock of Siliconix during the period beginning on and including the close of business on March 3, 2005[,] through and including May 16, 2005 (the date of the consummation of the Merger), including any and all of their respective successors in interest, predecessors, [and] representatives . . . ." The same order also approved the settlement, finding that the notice of the pendency of the class action and proposed settlement had been "adequate and sufficient" and that the terms of the settlement were "fair, reasonable, and adequate and in the best interests of the Class." Finally, the order adopted the settlement's release of liability stipulation language, quoted above, verbatim.

Although members of the Delaware class, none of the named plaintiffs in the California action participated in the Delaware proceedings or appealed the Delaware judgment. Instead, the present plaintiffs filed a Second Amended Complaint in their California state court action. In addition to the original two causes of action, the Second Amended Complaint stated a third, class-action claim for so-called "quasi-appraisal."[3] This cause of action alleged that the notice of

---

[3]"Quasi-appraisal" is a term of art under Delaware corporations law. Under Delaware's short-form merger statute, 8 Delaware Code § 253,

> a majority stockholder who owns at least 90% of a company's shares can eliminate the minority stockholders [via a short-form merger pursuant to 8 Del. Code § 253] without notice, vote, or other traditional indicia of procedural fairness. Absent fraud or illegality, the exclusive remedy of a minority stockholder is appraisal [pursuant to 8 Del. Code § 262]. In an appraisal action, minority stockholders are entitled to the *pro rata* fair value of their shares as of the merger date [as assessed by the Chancery Court, in place of the exchange rate offered by the majority shareholder in the tender offer].

*Gilliland v. Motorola, Inc.*, 873 A.2d 305, 310 (Del. Ch. 2005) (internal citations, quotation marks, and footnotes omitted). "[T]he right to an appraisal," however, "is a narrow statutory right, and dissenting stockhold-

appraisal rights in the Delaware litigation was inadequate and that the terms of the settlement were unfair. Vishay and Ernst & Young filed demurrers to the Second Amended Complaint in early 2006, arguing, among other points, that the Delaware judgment precluded the plaintiffs' suit. Although the California court rejected most of the demurrers,[4] it sustained Ernst & Young's demurrer as to the first and second causes of action (the derivative shareholder claim and the class action claim for breach of fiduciary duty) because of inadequate factual pleadings. The plaintiffs subsequently filed an Amendment to their Second Amended Complaint, adding specific facts relevant to Ernst & Young's alleged false statements and concealment.

Meanwhile, Vishay sought an injunction against the California litigation from the Delaware Court of Chancery, which

---

ers must comply strictly with [§ 262's procedural requirements] in making their demand." *Id.* Delaware law requires that stockholders be given notice in advance of the merger so they may perfect their appraisal rights. 8 Del. C. § 262.

Where the statutory appraisal remedy will not make a plaintiff whole— for example, when a plaintiff has been "wrongfully deprived, even indirectly, of the statutory remedy of appraisal" under 8 Delaware Code § 262 —Delaware courts fashion an equitable remedy of quasi-appraisal. *Gilliland*, 873 A.2d at 311. "Quasi-appraisal originated . . . as a non-statutory remedy for minority stockholders who, by tendering their shares on a materially uninformed basis, were prevented from seeking appraisal. The doctrine was later expanded to include situations in which minority stockholders may have been prevented from demanding appraisal due to a failure to comply fully with the notice provisions of the appraisal statute itself." *Id.* (internal citations omitted); *see also Weinberger v. UOP, Inc.*, 457 A.2d 701, 714-15 (Del. 1983) (creating the quasi-appraisal remedy).

[4]The California judge explained that "because of the nature of the pleading I am not going to find res judicata bars this action on those facts." He then stated, "I think it's not appropriate for the court to foreclose this action based upon taking judicial notice of facts [about the Delaware litigation] that are not clear, circumstances that are not clear . . . . So I'm going to overrule the demurrer . . . [as to] res judicata . . . ."

was granted. The Delaware court's injunction, dated June 13, 2006, ordered "that Plaintiffs, their successors and assigns, agents, attorneys, and all persons in active concert or participation with any of them, including but not limited to all members of the class certified in the [Delaware] Court's October 25, 2005 Order and Final Judgment, are permanently enjoined from prosecuting the action pending in the Superior Court of California, County of Santa Clara, *Proctor v. Vishay Intertechnology, Inc.,* Case No. 1-04-CV-018977."

Vishay presented the Delaware injunction to the California court at a case management conference, stating its intention to file a motion to dismiss if the plaintiffs continued to litigate their case in spite of the injunction. Ernst & Young took the position that the Delaware injunction precluded the plaintiffs' claims against it as well, even though it was not a named party in the Delaware action. The California judge instructed plaintiffs to "get [their] papers together [and] decide" whether to challenge the injunction in the Delaware court, and ordered the defendants to file their answers or demurrers to the plaintiffs' most recent filing on schedule.[5] The judge further noted:

---

[5]The California plaintiffs did not challenge the Delaware injunction in Delaware court. A challenge to the injunction was filed, however, by Ray Fitzgerald, a former Siliconix shareholder who is not a named plaintiff in the California action. Fitzgerald's letters to the Siliconix board of directors appear as exhibits attached to the plaintiffs' Second Amended Complaint, and he provided the California plaintiffs with an affidavit in support of their motion in opposition to the defendants' demurrer to the Second Amended Complaint.

The Delaware Supreme Court dismissed Fitzgerald's challenge to the injunction for lack of standing:

> Fitzgerald was not a named plaintiff either in the Delaware action or in the California action, did not seek to intervene in either case, and is not a party in any litigation affected by the Court of Chancery's order and final judgment. Fitzgerald argues that he should be permitted to appeal the Court of Chancery's final judgement on the sole ground that he is a member of the plaintiff class affected by the decision below. He makes this argument despite his lack of objection to the settlement.

"I will tell you this. I think it is rather extraordinary for a court in one state to tell the parties in litigation in this state how the court . . . ought to . . . rul[e] on the issue of whether or not settlement in that other state affects this litigation."

Ernst & Young's reaction to these developments was to file a notice of removal of the action to federal district court pursuant to SLUSA. SLUSA places limits on plaintiffs' ability to litigate "covered class action[s]," which it defines as private, state-law-based suits involving a "covered security" (that is, a nationally traded security such as Siliconix was at the time) "in which damages are sought on behalf of more than 50 persons or prospective class members." 15 U.S.C. §§ 78bb(f)(5)(B)(i)(I), (E). *See generally Madden v. Cowen & Co.*, 576 F.3d 957, 963-65 (9th Cir. 2009) (explaining the purpose and impact of SLUSA). If such a "covered class action" contains any allegation of "a misrepresentation or omission of a material fact" or the use of "any manipulative or deceptive device . . . in connection with the purchase or sale of a covered security," 15 U.S.C. § 78bb(f)(1), it is removable to federal court and, once removed, must be dismissed, *id.*§§ 78bb(f)(1)-(2). *See generally Madden*, 576 F.3d at 964-65 (discussing SLUSA's removal and preclusion provisions).

Congress's purpose in enacting SLUSA was to channel securities fraud litigation away from state-law class actions and into the federal courts under the Private Securities Litiga-

---

     In Delaware, a nonparty to an action generally has no standing to take an appeal to the Delaware Supreme Court . . . . There are no circumstances in this case that justify departing from this settled principle of Delaware law.

The defendants urge us to defer to language appearing elsewhere in the Delaware Supreme Court's order as presuming the validity of the injunction. We see no reason to consider that language, as, according to its own ruling, the Delaware Supreme Court had no jurisdiction over the appeal.

tion Reform Act of 1995, 109 Stat. 737 (codified at 15 U.S.C. §§ 77z-1 and 78u-4), which "requir[es] plaintiffs who bring private securities fraud actions in federal court to surmount a number of procedural hurdles" not applicable under state law. *Madden*, 576 F.3d at 964. There are, however, statutory exceptions to SLUSA preclusion, one of which is known as the "Delaware carve-out,"[6] which allow certain actions otherwise coming within SLUSA to go forward. *See* 15 U.S.C. § 78bb(f)(3)(A); *see also Madden*, 576 F.3d at 962-63; *infra*, Part A(1). The *In re Siliconix* litigation proceeded in the Delaware Chancery Court under the Delaware carve-out. The district court here held that Proctor's action, in contrast, does not fall within the Delaware carve-out.

Having so decided, the district court denied the plaintiffs' motion to remand to state court and accepted jurisdiction over the case, finding that removal was proper under 28 U.S.C. §§ 1331, 1441(a), and 1446(b). Quoting *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 63-64 (1987), it noted that "SLUSA completely preempts covered state law claims," thereby creating a basis for removal jurisdiction by " 'recharacterizing' the state law claim as a federal claim for purposes of the 'well pleaded complaint' rule."

The district court then dismissed the action as to Ernst & Young under Fed. R. Civ. P. 12(b)(6) and granted summary judgment as to Vishay under Fed. R. Civ. P. 56. The court justified both rulings as compelled by the Delaware injunction and the principle of "federal-state comity"[7] :

---

[6]Specifically, SLUSA's "Delaware carve-out" provision, 15 U.S.C. § 78bb(f)(3)(A)(i), preserves any otherwise "covered class action . . . that is based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) or organized (in the case of any other entity)."

[7]The district court therefore had no need to weigh the factual allegations in Proctor's complaint to consider Vishay's motion for summary judgment. We therefore assume, as have the parties, the facts as alleged in the complaint.

> While Plaintiffs correctly state the general rule that a state court may not enjoin proceedings in a federal court, the injunction at issue here "encompasses, among other claims, all the claims asserted by the representative plaintiffs in *Proctor v. Vishay Intertechnology, Inc.*, Case No. 1-04-CV-018977," and "plaintiffs settled and released, among other claims, all the claims asserted in [that action] . . . ." The fact that the case in question has been removed to this Court because some of the claims asserted are preempted by SLUSA does not entitle Plaintiffs to ignore the injunction any more than they were entitled to do so while the matter was pending before the [California] Superior Court. As a matter of federal-state comity, this Court will not entertain arguments regarding the jurisdiction of the Delaware Chancery Court unless and until Plaintiffs first have sought relief from the injunction in Delaware. Accordingly, the instant action will be dismissed. In order to permit Plaintiffs to initiate appropriate proceedings in Delaware, the dismissal shall be effective ninety (90) days after the date of this order.

(internal citation omitted). The plaintiffs did not initiate proceedings in Delaware court, and the district court's dismissal became effective.

The plaintiffs now appeal the district court's denial of their motion to remand, its dismissal of their claims against Ernst & Young, and its grant of summary judgment for Vishay. We review a district court's order denying a motion to remand for lack of removal jurisdiction *de novo*. *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 760 (9th Cir. 2002). We also review *de novo* a district court's dismissal, *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006), and grant of summary judgment, *Avista Corp., Inc. v. Wolfe*, 549 F.3d 1239, 1246 (9th Cir. 2008).

## ANALYSIS

### A.  The Remand Motion

Proctor first contends that the district court erred in denying the motion to remand the case to state court at the outset. For the reasons below, we affirm the district court.

### 1.  *Removability*

Proctor now concedes that this lawsuit was SLUSA-removable, but challenges the district court's denial of her remand motion solely on the ground that there were procedural defects in the defendants' removal notice. Parties "cannot waive . . . a court's lack of subject matter jurisdiction." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1228 (9th Cir. 1989) (emphasis omitted). Regardless of the parties' concessions, therefore, we must satisfy ourselves that this lawsuit was in fact removable under SLUSA.

[1] We begin by clarifying the jurisdictional basis of SLUSA-removable cases. The district court reasoned that SLUSA completely preempted the state law causes of action, thereby approving of Ernst & Young's removal on the basis of 28 U.S.C. §§ 1331 and 1441. "A case 'arises under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.' " *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983) (brackets omitted)). One exception to the statutory "well-pleaded complaint" rule is when Congress "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co.*, 481 U.S. at 63-64; *see also*

*Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 560 (1968).

This court had suggested that SLUSA completely preempts state law claims and therefore falls under the complete preemption exception to the well-pleaded complaint rule of 28 U.S.C. § 1331. *See, e.g.*, *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1127-28 (9th Cir. 2002) (recognizing that SLUSA provides for removal but explaining the basis for federal subject matter jurisdiction as SLUSA's complete preemption of state claims); *Patenaude v. Equitable Life Assurance Soc'y of U.S.*, 290 F.3d 1020, 1023 (9th Cir. 2002) (noting that because of the well-pleaded complaint rule, a federal defense will not ordinarily create subject matter jurisdiction, and that "the district court had subject matter jurisdiction over Patenaude's complaint if, and only if, SLUSA completely preempted the state law claims . . . assert[ed]").

[2] After these cases were decided, however, the Supreme Court made clear in *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 636 n.1 (2006), that SLUSA "does not itself displace state law with federal law but makes some state-law claims nonactionable through the class action device in federal as well as state court." In other words, SLUSA does not provide a federal rule of decision in lieu of a state one, but instead provides a federal defense precluding certain state law actions from going forward. Thus, what we termed complete preemption in pre-*Kircher* cases,[8] by which we are no longer bound on this issue given the Supreme Court's more recent pronouncement, *see Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc), is actually a federal preclusion

---

[8]In *U.S. Mortgage, Inc. v. Saxton*, 494 F.3d 833, 842 (9th Cir. 2007), decided after *Kircher*, we again described SLUSA "as an express exception to the well-pleaded complaint rule." However, *Saxton* did not recognize or cite *Kircher*, and it relied on pre-*Kircher* case law for this proposition.

defense, and would not fall under the complete preemption exception to § 1331's well-pleaded complaint rule.[9]

We need not consider whether § 1331 applies on some basis other than complete preemption, as SLUSA itself provides a basis for federal jurisdiction. SLUSA creates a federal defense to certain covered class actions, prohibiting those actions from going forward in state *or* federal court. 15 U.S.C. § 78bb(f)(1). It separately provides for removal jurisdiction

---

[9]Some courts have alternatively determined that SLUSA, while not completely displacing state law, nonetheless results in complete preemption, and so is an exception to the well-pleaded complaint rule ordinarily determinative of "arising under" jurisdiction because "Congress has expressly provided that a state-law claim be removed to federal court." *Winne v. Equitable Life Assurance Soc'y of U.S.*, 315 F. Supp. 2d 404, 409 (S.D.N.Y. 2003); *see also Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 131 & n.1 (2d Cir. 2003) (Newman, J., concurring) (noting this unique category of "complete preemption" in the context of SLUSA jurisdiction).

This assertion appears to be based on *Beneficial National Bank v. Anderson*, 539 U.S. 1, 8 (2003), in which the Supreme Court stated that "a state claim may be removed to federal court [on preemption grounds] in only two circumstances—when Congress expressly so provides . . . or when a federal statute wholly displaces the state-law cause of action through complete preemption." Whatever the outer bounds of this first category of cases may be, we very much doubt that SLUSA falls within it.

*El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 484 n.6 (1999), from which this category derives, held that the Price-Anderson Act's structure, which provided for district court original jurisdiction over and removal of public liability claims, "resemble[d] what [the Court] ha[d] spoken of as complete preemption doctrine." *Id.* (internal quotation marks omitted). But the Price-Anderson Act included a provision expressly stating that public liability actions that were removable "shall be deemed to be an action *arising under* [the Act], and the substantive rules for decision in such action shall be derived from" state law. 42 U.S.C. § 2014(hh) (emphasis added). SLUSA includes neither anything resembling the *El Paso* statutory provision converting state claims into federal ones nor the explicit reference to "arising under" jurisdiction. We therefore do not see how the unusual form of congressionally determined "arising under" jurisdiction is applicable here.

over those actions. *Id.* § 78bb(f)(2). Congressional provision of removal jurisdiction apart from 28 U.S.C. § 1331 is entirely permissible, so long as the jurisdiction does not exceed the bounds of Article III and Congress has in fact so provided by statute. *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 497-98 (1983). SLUSA meets both requirements.

[3] SLUSA's removal provision does not exceed the bounds of Article III federal question jurisdiction, which is broader than § 1331 "arising under" jurisdiction. *See id.* at 495. While the Act's removal provision, 15 U.S.C. § 78bb(f)(2),[10] alone is not sufficient to confer jurisdiction within constitutional bounds, *see Verlinden*, 461 U.S. at 496, the separate provision for a preclusion defense requiring the dismissal of covered class actions, *id.* § 78bb(f)(1),[11] creates a federal question hook on which removal can hang, *see Verlinden*, 461 U.S. at 496-97. *See also Mesa v. California*, 489 U.S. 121, 136 (1989) (reaffirming, in a case involving a statutory right of removal to federal court by federal officers, that an assertion of a federal defense in a removal petition is sufficient for Article III purposes to support jurisdiction). As SLUSA's removal provision makes clear, Congress intended to permit federal court adjudication of such claims. Section 78bb(f)(2) is therefore constitutionally sufficient to support

---

[10]The removal provision, 15 U.S.C. § 78bb(f)(2), states:

Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court . . . .

[11]The preclusion provision, 15 U.S.C. § 78bb(f)(1), provides:

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

removal jurisdiction, and no recourse to another jurisdictional statute—such as 28 U.S.C. § 1331—is necessary.

Having determined that SLUSA alone could properly confer jurisdiction over this case if a claim is covered by SLUSA, we next analyze the claims. As currently pleaded, the complaint contains three claims: (1) a derivative claim on Siliconix's behalf for breach of fiduciary duty and waste of corporate assets; (2) a class action claim on behalf of the putative class of minority shareholders for breach of fiduciary duty; and (3) a class action claim on behalf of the putative class of minority shareholders for quasi-appraisal under 8 Delaware Code § 262. The plaintiffs initially brought all three claims against all the defendants but later withdrew claim (3) with regard to Ernst & Young.

**[4]** To be removable under SLUSA, a complaint must contain at least one precluded claim. *See* 15 U.S.C. § 78bb(f)(2) (providing for the removal of "[a]ny covered class action brought in any State court involving a covered security"); *Falkowski*, 309 F.3d at 1131 (allowing the removal of an entire case where some but not all of the plaintiff's claims were precluded by SLUSA). On the basis of this removal, the district court could have, at least temporarily, exercised jurisdiction over any non-precluded claims as well, as SLUSA provides for the removal of "[a]ny covered class action," § 78bb(f)(2), not just individual claims.[12]

---

[12]Because we conclude that the district court had removal jurisdiction but do not decide whether it would have had original jurisdiction over the case under 28 U.S.C. § 1331, we do not decide whether the district court could have relied solely on the supplemental jurisdiction provided by 28 U.S.C. § 1367, which applies only to "civil action[s] of which the district courts have *original* jurisdiction." (emphasis added). *See also Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 558 (2005) (noting that "[s]ection 1367(a) is a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction").

**[5]** Proctor's lawsuit contains one precluded claim: claim (2), the class action claim for breach of fiduciary duty. This claim meets all four of SLUSA's threshold requirements: First, it is brought in the context of a "covered class action," in that the plaintiffs seek a "damages [remedy] . . . on behalf of more than 50 persons or prospective class members." 15 U.S.C. § 78bb(f)(5)(B)(i)(I). Second, it is "based upon the statutory or common law of [a] State," California. *Id.* § 78bb(f)(1). Third, the Siliconix minority shares at issue are "covered securit[ies]," *id.* § 78bb(f)(5)(E), because they were nationally traded and listed on a national securities exchange, *id.* § 77r(b), "at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred," *id.* § 78bb(f)(5)(E). Fourth, and finally, the claim rests on allegations of "misrepresentation[s] or omission[s] of a material fact in connection with the purchase or sale of a covered security,"[13] *id.* § 78bb(f)(1)(A): the allegation that Ernst & Young "made false[ ] or intentionally

---

[13]Misrepresentation need not be a specific element of the claim to fall within the Act's preclusion. *See Segal v. Fifth Third Bank*, ___ F.3d ___, 2009 WL 2958438, at *2, *4 (6th Cir. Sept. 17, 2009) (noting that SLUSA does not require that "the complaint make[ ] material or dependent allegations of misrepresentation" and affirming the dismissal of the plaintiff's claims where covered allegations were incorporated by reference into each count (internal quotation marks omitted)); *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 300 (3d Cir. 2005) ("Where, as here, allegations of a material misrepresentation serve as the *factual predicate* of a state law claim, the misrepresentation prong is satisfied under SLUSA." (emphasis added)); *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 701-02 (5th Cir. 2004) ("[T]he only question before us is whether Miller's breach of contract claim alleged that Nationwide made untrue statements . . . . Miller's complaint clearly does include such allegations . . . . All of these charges are incorporated by reference into Miller's breach of contract claim [specifically] . . . . We thus conclude that Miller's state law claim falls within the prohibition of [SLUSA].); *Prof'l Mgmt. Assocs., Inc. Employees' Profit Sharing Plan v. KPMG LLP*, 335 F.3d 800, 802-03 (8th Cir. 2003), *cert. denied*, 540 U.S. 1162 (2004) (holding that a negligence claim, which as a legal matter does not require allegations of fraud, nonetheless triggered SLUSA because the complaint incorporated into the negligence claim the requisite allegations of misrepresentation).

incomplete and misleading" statements in several documents directed at shareholders and at shareholders' meetings concerning Vishay's actions with regard to and impact on Siliconix "so that Vishay could acquire the stock of Siliconix's minority shareholders below the stock's true value."

As to this fourth requirement, we note that Ernst & Young's alleged misrepresentations and omissions were made *before* the announcement of the tender offer and merger. Nevertheless, based on the plaintiffs' allegations alone,[14] these misrepresentations and omissions were made specifically for the purpose of masking Vishay's looting of Siliconix and its deceptive inflation of the relative value of Vishay's own stock, thereby inducing the minority shareholders to sell their Siliconix stock to Vishay at a disadvantageous exchange rate once a tender offer was made. These allegations establish a sufficiently close connection between the misrepresentations and the sale of Siliconix stock to satisfy SLUSA's "in connection with" requirement. *See Falkowski*, 309 F.3d at 1131 (holding that "[t]he claim that defendant concealed the impending accounting write-off sufficiently alleges fraud 'in connection with' a contract to sell Imation shares because it involves a misrepresentation about the value of the options"); *see also Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1348-49 (11th Cir. 2008); *Prof'l Mgmt. Assocs., Inc.*, 335 F.3d at 802-03.[15]

---

[14]SLUSA "authorizes removal and dismissal based on the allegations in the complaint and does not require any additional evidentiary showing from either party." *U.S. Mortgage, Inc. v. Saxton*, 494 F.3d 833, 842 (9th Cir. 2007).

[15]The plaintiffs' claim (2) would be saved from preclusion if it fit within 15 U.S.C. § 78bb(f)(3)(A), the "Delaware carve-out," discussed *infra*. But claim (2) plainly does not fit within the Delaware carve-out because it states a violation of California law—not Delaware law, where Siliconix was incorporated—and so is not "based upon the . . . law of the State in which the issuer is incorporated." *Id.* § 78bb(f)(3)(A)(i).

Moreover, these allegations are sufficiently pleaded to invoke SLUSA preclusion of claim (2) against Ernst & Young *and* Vishay.[16] While plaintiffs allege only that Ernst & Young directly made misrepresentations and omissions, some of the alleged misrepresentations are in documents issued on behalf of Vishay and the Amendment to the Second Amended Complaint clearly asserts that Ernst & Young's misrepresentations were "among the overt acts, or omissions, in which Ernst & Young engaged in furtherance of its conspiracy with, and in aiding and abetting, Vishay and the other defendants." Thus, although claim (2) against Vishay does not state that Vishay itself made misrepresentations or omissions, the plaintiffs' pleadings implicate Vishay as responsible for Ernst & Young's acts and so warrant dismissal of this claim against all defendants.

Proctor's claims (1) and (3), in contrast, do not come within SLUSA's preclusive scope. Claim (1), a shareholder derivative action alleging breach of a fiduciary duty, is not a class claim and so does not satisfy the first requirement for SLUSA preclusion. *See* 15 U.S.C. § 78bb(f)(5)(B)(i)(I). Claim (3), alleging inadequacy of the notice given the minority shareholders before the merger, was not affected by Proctor's Amendment to the SAC, which expressly applied only to claims (1) and (2), and so, lacking any reference to material omissions and misrepresentation, does not satisfy the fourth requirement for preclusion. 15 U.S.C. § 78bb(f)(1)(A). As already noted, however, only one claim in a complaint needs to be precluded under SLUSA to make removal to federal court of the entire action proper.

**[6]** We therefore hold that the district court correctly assumed removal jurisdiction over the plaintiffs' lawsuit under SLUSA, and now turn to the other grounds upon which Proctor challenges denial of the motion to remand the case.

---

[16]Again, we use "Vishay" to refer to Vishay Intertechnology, Inc, and all other defendants. *See supra* Op. at 14502.

## 2. *Timeliness*

**[7]** Under 28 U.S.C. § 1446(b), a defendant sued in state court must file a notice of removal "within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Ernst & Young's notice of removal was filed on June 30, 2006. Proctor suggests that the thirty-day clock for removal began to run when the First or Second Amended Complaint was served, making Ernst & Young's removal notice untimely. Not so.

**[8]** Again, the sole basis for federal jurisdiction in this case is SLUSA. It was not ascertainable from either the First or the Second Amended Complaint that the case came within SLUSA's preclusive scope.

The First Amended Complaint contains allegations of looting, not allegations of misrepresentations made in connection with the purchase or sale of a security. Indeed, the 2005 tender offer and merger did not happen until *after* the First Amended Complaint was filed, so the allegations therein could not, at the time of service, have put the defendants on notice of any alleged misrepresentations made "in connection with the purchase or sale" of Siliconix stock. 15 U.S.C. § 78bb(f)(1)(A).

Nor would the Second Amended Complaint have supported removal under SLUSA. The only allegation in that complaint that could be construed as an allegation of material misrepresentation is the assertion that in 2004, Ernst & Young "obviously knew" that Siliconix was guaranteeing Vishay's line of credit and that "Ernst & Young's allegiance to Vishay . . . affected its good judgment." But the Second Amended Complaint does not specifically allege that Ernst & Young omitted or represented any material information "in connection with" the 2005 tender offer and merger, and so, without amendment,

that complaint would not have supported removal under SLUSA. In fact, as the district court noted, "the state court . . . sustained [Ernst & Young's] demurrer[ ] [to the Second Amended Complaint] on the basis that Plaintiffs had set forth insufficient facts to link Ernst & Young to [their claim for breach of fiduciary duty]."

In short, the basis for federal removal under SLUSA was not ascertainable "on the face of" either the First or Second Amended Complaint. *See Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 695 (9th Cir. 2005). That the defendants might have guessed that the plaintiffs would amend their pleadings to put forward sufficient facts to support removal is not sufficient to start the thirty-day clock. "[W]e don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).

**[9]** The Amendment to the Second Amended Complaint, filed and served on the defendants on May 31, 2006, did provide that information. The Amendment contained specific allegations that Ernst & Young "concealed" or "made false[ ] or intentionally incomplete and misleading" statements in various reports and filings, and at shareholders' meetings, concerning Vishay's misappropriation of Siliconix's software systems and sales subsidiaries, Vishay's impact on Siliconix's indebtedness and borrowing capabilities, and Vishay's other actions affecting Siliconix's financial position, "so that Vishay could acquire the stock of Siliconix's minority shareholders below the stock's true value." These allegations of false statements or omissions "in connection with the purchase or sale" of Siliconix stock met the SLUSA requirements for federal jurisdiction. Following the rule laid out in *Harris*, the start-date for purposes of 28 U.S.C. § 1446(b)'s thirty-day clock was the date of service of the Amendment to the Second Amended Complaint. *See Harris*, 425 F.3d at 695. Ernst & Young's removal notice was filed within thirty days of that

date. The district court's holding that the removal notice was timely was therefore correct.

### 3. *Joinder*

Plaintiffs next argue that Ernst & Young's notice of removal was procedurally improper because Ernst & Young's co-defendant Vishay did not provide timely written notice of its joinder. In a case involving multiple defendants, "[a]ll defendants must join in a removal petition." *Hewitt v. City of Stanton*, 798 F.2d 1230, 1232 (9th Cir. 1986). Ernst & Young's notice of removal represented that "[a]ll defendants *consent* to the removal of this action" (emphasis added), but Vishay itself did not submit a written notice stating its joinder until September 15, 2006, well outside the thirty-day window for removal.

**[10]** The circuits are divided as to what form a co-defendant's joinder in removal must take. We have not yet decided the matter. The Sixth Circuit requires only that "at least one attorney of record" sign the notice and certify that the remaining defendants consent to removal; it does not insist that each defendant submit written notice of such consent. *See Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 201-02 (6th Cir. 2004). In contrast, the Fifth, Seventh, and Eighth Circuits have adopted the more demanding requirement that each co-defendant must submit a timely, written notice of consent to joinder. *See Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 n.11 (5th Cir. 1988); *Roe v. O'Donohue*, 38 F.3d 298, 301 (7th Cir. 1994), *abrogated on other grounds by Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999); *Pritchett v. Cottrell, Inc.*, 512 F.3d 1057, 1062 (8th Cir. 2008).

**[11]** We adopt the Sixth Circuit's position as fully sufficient to implement the unanimous joinder rule. The so-called "rule of unanimity," announced by the Supreme Court in *Chicago, Rock Island, & Pacific Railway Co. v. Martin*, 178 U.S.

245, 248 (1900), as an interpretation of a predecessor removal statute, merely says that "all the defendants must join in the application" for removal. *See also Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002) (citing *Chicago* only for the proposition that "removal requires the consent of all defendants"). *Chicago* does not specify *how* defendants must join in removal. Nor does any federal rule or statute specifically prescribe a particular manner in which co-defendants' joinder must be expressed. In the absence of any rule governing joinder in removal, we turn to the general principles that govern procedures for removal and for attorney representations to district courts generally. Under 28 U.S.C. § 1446(a), "[a] defendant or defendants desiring to remove any civil action" must file a "notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure." Rule 11, in turn, provides that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record," Fed. R. Civ. P. 11(a), and that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that . . . the factual contentions [therein] have evidentiary support . . . ." *Id.* 11(b).

**[12]** Applying these general principles, we conclude that the filing of a notice of removal can be effective without individual consent documents on behalf of each defendant. One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient. Ernst & Young submitted such an averment under threat of sanctions pursuant to Rule 11; the other co-defendants were notified of the removal notice and had an opportunity to object to it. These two considerations—the availability of sanctions and of objection—mitigate concerns that one defendant might falsely state the other defendants' consent, or that one defendant might game the system by silently allowing another to remove and, if the federal forum proves disadvantageous, belatedly object that he had not consented.

We emphasize that *Chicago*'s requirement that all co-defendants "join" in requesting removal remains binding. Like the Sixth Circuit, however, we interpret that requirement as met if, as here, one defendant avers that all defendants consent to removal. *See Harper*, 392 F.3d at 201-02.

**[13]** As the removal notice was timely and procedurally proper, the district court properly denied Proctor's motion to remand.

## B. The Merits

Having established that this case is properly in federal court, we now address the merits—or more precisely, whether this case should have been dismissed in its entirety, as it was, because of the Delaware injunction or for another reason. We affirm the district court's dismissal of Proctor's claim (2), on which SLUSA removal was predicated, as it should have been dismissed as precluded by SLUSA. We reverse the district court's dismissal of claims (1) and (3): Once Proctor's second claim was dismissed, the district court was required by SLUSA to remand the remaining claims to state court. The Delaware injunction did not bind the district court.

### 1. *Preclusion under SLUSA*

The district court dismissed plaintiffs' claims on the basis of "federal-state comity." On appeal, however, we may affirm the district court's holding on any ground raised below and fairly supported by the record. *See Washington v. Confed. Bands & Tribes of Yakima Indian Nation*, 439 U.S. 463, 477 n.20 (1979) (stating that a prevailing party is "free to defend its judgment on any ground properly raised below whether or not that ground was relied upon, rejected, or even considered by the District Court"); *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003) (per curiam) (providing that this court may affirm on any ground fairly supported by the

record). We therefore begin by considering which of Proctor's claims, if any, are subject to dismissal by virtue of SLUSA.

**[14]** As discussed above, one of Proctor's claims—claim (2), the class action claim for breach of fiduciary duty—qualifies under SLUSA as a precluded class action claim alleging "misrepresentation[s] or omission[s] of . . . material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A). Although the district court did not rely on SLUSA to dismiss this claim, we do so now. SLUSA permits nothing less, because "[n]o covered class action [that alleges a misrepresentation of material fact in connection with the sale of a covered security] based upon the . . . law of any State . . . may be maintained in . . . Federal court." *Id.* § 78bb(f)(1).

That leaves claim (1), the derivative claim on Siliconix's behalf for breach of fiduciary duty against Vishay and Ernst & Young, and claim (3), for quasi-appraisal, against Vishay only. As explained, these claims were not themselves subject to removal and preclusion under SLUSA, but were removed along with claim (2) and came within the federal court's jurisdiction authorized by SLUSA.

**[15]** SLUSA unquestionably requires the dismissal of the precluded claim (2), but does it require the dismissal of the other, non-precluded claims as well? Our decision in *Falkowski* assumed that it does not,[17] but "unstated assumptions

---

[17]*Falkowski* affirmed the district court's holding that the plaintiffs' fraud claims were precluded under SLUSA and had to be dismissed, but reversed the district court's dismissal of the plaintiffs' "garden variety state law claims" for breach of contract, which were not covered class actions under SLUSA and which it held should not have been dismissed on a 12(b)(6) motion. 309 F.3d at 1131. By doing so, *Falkowski* necessarily assumed that the district court had jurisdiction to entertain claims other than the precluded fraud claims. *Falkowski* did not, however, acknowledge or discuss the issue specifically raised before us, namely, whether SLUSA preclusion applies to an entire action.

on non-litigated issues are not precedential holdings binding future decisions," *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985), and our subsequent decision in *Saxton* treated the issue as an unsettled one. *See Saxton*, 494 F.3d at 846. Other courts of appeals have directly considered the question and held that dismissal of the entire complaint is not required. *See In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 255-56 (3d Cir. 2009) (considering complaint with SLUSA-precluded state law claims and non-precluded federal claims); *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 47 (2d Cir. 2005) ("*Dabit I*"), *rev'd on other grounds by* 547 U.S. 71 (2006) ("*Dabit II*") (considering complaint with SLUSA-precluded and non-SLUSA precluded state law claims).[18] Today we, too, clarify that SLUSA does not require the dismissal of non-precluded claims along with precluded claims.

Looking first to the statutory language, we find no indication that the dismissal of the entire action is required. True, SLUSA's preclusion provision speaks of "actions" and "lawsuits," not of individual claims. *See* 15 U.S.C. § 78bb(f)(1) ("No covered class action . . . may be maintained . . . ." ); *id.* § 78bb(f)(5)(B) (defining "covered class action" as "any single lawsuit" or "group of lawsuits"). But Congress's use of the term "action" in SLUSA is not alone determinative as to whether the entire case must be dismissed based on the presence of one precluded claim. The Supreme Court made this much clear in the context of the Prison Litigation Reform Act's 42 U.S.C. § 1997e(a), which provides that "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." *See Jones v. Bock*, 549 U.S. 199, 221 (2007). In doing so, it stated that

---

[18]The Eleventh Circuit has affirmed, without discussion of this point, the dismissal of an entire action where one claim was SLUSA-precluded. In that case, the individual claims that were not precluded by SLUSA were dismissed without prejudice. *See Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095-96 (11th Cir. 2002).

> As a general matter, if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad. Only the bad claims are dismissed; the complaint as a whole is not. If Congress meant to depart from this norm, we would expect some indication of that, and we find none.

*Id.* (internal quotation marks and brackets omitted); *see also In re Lord Abbett*, 553 F.3d at 256-57 (applying this PLRA example in the context of SLUSA); *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 242 (S.D.N.Y. 2007) (stating that *Jones*'s language "about norms for interpreting statutory language concerning dismissal of a complaint reinforce[d] [the district court's] interpretation of SLUSA" that claims must be considered separately (internal quotation marks omitted)).

Moreover, once a precluded SLUSA claim is dismissed, the complaint no longer includes a claim that rests on an allegation of misrepresentation. Requiring the federal court to refrain from dismissing the non-precluded claims does not offend SLUSA's command that "[n]o covered class action . . . may be *maintained* in any State or Federal court . . . [if it alleges] a misrepresentation or omission of a material fact . . . ." 15 U.S.C. § 78bb(f)(1) (emphasis added). By using the word "maintained" rather than "filed," the language focuses on the content of the action as it goes forward, not as it began, and so does not require that a federal court dismiss an entire action where only some claims are precluded by SLUSA. Dismissal of precluded claims while allowing the remainder of the case to remain pending thus fully comports with the statutory language.

Moreover, the purposes of SLUSA would not be served by the dismissal of entire actions. As the House Report made clear, among SLUSA's purposes are (1) to prevent plaintiffs from "circumvent[ing] the [Private Securities Litigation Reform] Act's provisions by . . . filing frivolous and speculative lawsuits in State court, where essentially none of the

Reform Act's procedural or substantive protections against abusive suits are available" and (2) to prevent a "single state" from "impos[ing] the risks and costs of its peculiar litigation system on all national issuers." H.R. Rep. No. 105-803, at 14-15 (1998) (Conf. Rep.) (internal quotation omitted). Like the Third Circuit, "[w]e struggle to see how permitting . . . claims that do not specifically trigger the SLUSA [preclusion provision] to proceed would lead to either abusive litigation or to the application of different legal standards to national securities." *In re Lord Abbett*, 553 F.3d at 255. Nothing in SLUSA's text or the legislative history suggests that Congress intended to place roadblocks in the way of federal claims or *non-precluded* state law claims; its only discernible intent was to preclude the use of the class-action device to prosecute certain state-law class action claims. *See Dabit II*, 547 U.S. at 87. In fact, if SLUSA required the dismissal of all claims, precluded and non-precluded, appearing in the same complaint, plaintiffs could easily circumvent the statute by dividing their claims into two separate actions, "one action with the potentially [precluded] state law claims and one or more with the remaining claims." *In re Lord Abbett*, 553 F.3d at 255. Reading SLUSA to allow the survival of non-precluded claims, in contrast, achieves Congress's goals without encouraging such inefficient behavior.

*Kircher* is not to the contrary. *Kircher* states in a footnote that "if a claim is precluded, it may not be maintained, and if the claim is not [precluded], the federal courts no longer have any business being involved, as there is no longer any federal question on which to moor the district court's jurisdiction." 547 U.S. at 644 n.12 (internal citation and brackets omitted). Importantly, in *Kircher*, the district court concluded that it lacked SLUSA jurisdiction over the action *at the outset* because the plaintiffs' "claims did not satisfy the 'in connection with the purchase or sale' requirement of the Act's preclusion provision." *Id.* at 638. Nothing in *Kircher* suggests that an action over which the district court *properly* assumed jurisdiction when the removal notice was filed must be dis-

missed in its entirety, rather than—as we next conclude—remanded to the state court from whence it came. *Accord In re Lord Abbett*, 553 F.3d at 256 (distinguishing *Kircher*).

**[16]** We therefore join the Second and Third Circuits in holding that SLUSA does not require the dismissal of all non-precluded claims appearing in the same complaint as a precluded claim.

### 2.    *Remand under SLUSA*

There remains the question to which we just alluded—whether the district court was required to remand the action to state court after dismissing claim (2), the SLUSA-precluded claim. Our case law does not directly govern this question. We assumed in *Falkowski*, but did not directly decide, that a district court could retain jurisdiction over "garden variety state law claims" after a SLUSA-precluded claim was dismissed. 309 F.3d at 1131. We subsequently stated in *Saxton* that "[i]t is not settled whether SLUSA either permits or requires the remand of particular claims in a single suit that contains some claims that are preempted, and some claims that are not." 494 F.3d at 846.

**[17]** We now hold that SLUSA requires remand once a federal court dismisses precluded claims.[19] SLUSA contains its own remand provision, which states that "[i]n an action that has been removed from a State court pursuant to [SLUSA], if the Federal court determines that the action may be main-

---

[19]If 28 U.S.C. § 1331 applies to SLUSA-precluded actions, the SLUSA remand provision, 15 U.S.C. § 78bb(f)(3)(D), would have to be reconciled with the general supplemental jurisdiction provision of 28 U.S.C. § 1367, which makes discretionary the remand of claims over which a court exercises supplemental jurisdiction once "the district court has dismissed all claims over which it has original jurisdiction." Should both apply, we read the SLUSA remand provision as a limitation on the discretion accorded the district court by § 1367, in effect taking away the discretion that § 1367 grants.

tained in State court pursuant to this subsection, the Federal court *shall* remand such action to such State court." 15 U.S.C. § 78bb(f)(3)(D) (emphasis added). Another statute, 28 U.S.C. § 1447(c), which applies generally to cases removed from state court, including SLUSA, *see Kircher*, 547 U.S. at 641 (applying § 1447(d) to a case involving SLUSA), already requires remand for wrongful removal. It provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Thus, we read SLUSA's remand provision, 15 U.S.C. § 78bb(f)(3)(D), to expand the requirement for remand to cases in which removal was proper in the first place, but a federal court has dismissed all SLUSA-precluded claims and only non-precluded state law claims remain.

[18] In sum, only Proctor's claims (1) and (3) survive SLUSA, and the district court should have remanded these claims to state court after dismissing claim (2).

### 3. *The effect of the Delaware injunction*

One possible counter to our analysis in Part B(2) is that the Delaware injunction may have required the district court to dismiss claims (1) and (3) rather than remanding them to state court. We need not decide whether SLUSA requires immediate remand of non-precluded claims and therefore prevented the district court from even considering the impact of the Delaware injunction at that juncture. As we discuss below, even if it could entertain the question whether to defer to the Delaware injunction as to the non-precluded claims—claims (1) and (3)—the district court should not have given effect to the Delaware injunction. Our conclusion regarding remand is therefore unchanged.

[19] The district court dismissed the plaintiffs' action against Ernst & Young and granted summary judgment against Vishay solely because of the Delaware injunction. The district court held:

> As a matter of federal-state comity, this Court will not entertain arguments regarding the jurisdiction of the Delaware Chancery Court unless and until Plaintiffs first have sought relief from the injunction in Delaware. Accordingly, the instant action will be dismissed.

For the reasons explained below, we hold that in focusing on the Delaware court's injunction and in construing the matter as one of comity, the district court erred.

Under controlling Supreme Court precedent, the district court was not bound by the Delaware injunction. *Donovan v. City of Dallas*, 377 U.S. 408 (1964), held that "state courts are completely without power to restrain federal-court proceedings in *in personam* actions." *Id.* at 413 (italics added); *see also Hawthorne Sav. F.S.B. v. Reliance Ins. Co. of Ill.*, 421 F.3d 835, 851 (9th Cir. 2005) ("[S]tate courts may never enjoin *in personam* proceedings in the federal courts."), *amended by* 433 F.3d 1089 (9th Cir. 2006). As *Donovan* elaborated, "it does not matter that the prohibition here was addressed to the parties rather than to the federal court itself." 377 U.S. at 413.

Nor would the principle of comity allow the district court to give effect to the Delaware court's injunction, as the district court supposed. The Delaware settlement may have a preclusive effect on the plaintiffs' federal action. But the Delaware court cannot enforce that preclusive effect via an injunction that reaches out to constrain the workings of the federal court. *Cf. Baker v. Gen. Motors Corp.*, 522 U.S. 222, 235 (1998) ("Full faith and credit . . . does not mean that States must adopt the practices of other States regarding the time, manner, and mechanisms for enforcing judgments. Enforcement measures do not travel with the sister state judgment as preclusive effects do; such measures remain subject to the evenhanded control of forum law."). As the Delaware court injunction simply cannot have the effect it purports to

have, a federal court has no basis for giving it that effect, whether as a matter of comity or otherwise. Rather, as in other circumstances, federal courts are nearly always obliged to exercise their jurisdiction absent some recognized basis for not doing so. *See New Orleans Public Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989) (noting that "the federal courts' obligation to adjudicate claims within their jurisdiction [is] virtually unflagging" (internal quotation marks omitted)).

**[20]** We therefore reverse the district court's dismissal and grant of summary judgment as to claims (1) and (3) because 15 U.S.C. § 78bb(f)(3)(D) so required. The Delaware injunction, even assuming that the district court was bound first to consider its effect, did not restrict the district court on the basis of comity or otherwise from considering (and immediately remanding) the remaining claims. Whether the Delaware settlement bars these claims in California state court is a matter for the state court to determine on remand.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order denying the plaintiffs' motion to remand the action as it existed at the time of removal to state court. We **AFFIRM** the district court's dismissal of claim (2), albeit on the alternative ground of SLUSA preclusion. We **REVERSE** the district court's order granting Ernst & Young's motion to dismiss and Vishay's motion for summary judgment on claims (1) and (3) and **REMAND** with instructions to remand this case to state court now that claim (2) has been dismissed.

**AFFIRMED in part; REVERSED in part; REMANDED.**