[No. H037428. Sixth Dist. Feb. 19, 2013.]

REBECCA PROCTOR et al., Plaintiffs and Appellants, v.
VISHAY INTERTECHNOLOGY, INC., et al., Defendants and Respondents.

1262

---

COUNSEL

Hennefer, Finley & Wood, James A. Hennefer; Blecher & Collins, Maxwell M. Blecher, Jordan L. Ludwig; Green & Noblin, Robert S. Green and James Robert Noblin for Plaintiffs and Appellants.

Latham & Watkins, Peter A. Wald, David M. Friedman, Lori Alvino McGill, Roman Martinez and Patrick E. Gibbs for Defendant and Respondent Ernst & Young LLP.

Kramer Levin Naftalis & Frankel, Alan R. Friedman, Jonathan M. Wagner, Adina C. Levine; O'Melveny & Myers, Daniel H. Bookin, Roberta H. Vespremi and Sara M. Folchi for Defendants and Respondents Vishay Intertechnology, Inc., Vishay TEMIC Semiconductor, Acquisition Holdings Corp., and Estate of Felix D. Zandman.

OPINION

**ELIA, Acting P. J.**—In this appeal, a certified class of former minority shareholders of Siliconix, Inc., represented by Rebecca Proctor, seeks review of a judgment dismissing their action against defendants Vishay Intertechnology, Inc. (Vishay); individuals and entities associated with Vishay; Siliconix; and Vishay's auditor, Ernst & Young, LLP (E &Y). Plaintiffs' lawsuit, which arose from a tender offer and merger effected by Vishay, eventually culminated in two causes of action: a shareholders' derivative claim and a class action claim for quasi-appraisal. The superior court sustained defendants' demurrers to plaintiffs' fourth amended complaint without leave to amend, based on a prior adjudication of related claims in a Delaware court. Plaintiffs challenge the superior court's ruling, contending that the Delaware court's judgment is not entitled to full faith and credit because the Delaware court wrongly foreclosed litigation on their quasi-appraisal claim in California. Because we agree with the superior court's application of collateral estoppel to the Delaware court's adjudication of the issues, we must affirm the judgment dismissing the action.

*Background*

Vishay was a manufacturer of passive electronic components and semiconductor components. Plaintiffs were minority shareholders of Siliconix, a company that designed, manufactured, and marketed semiconductor products. (See *In re Siliconix Inc. Shareholders Litigation* (Del.Ch., June 21, 2001, No. CIV. A. 18700) 2001 WL 716787, p. *1.) Both companies were incorporated in Delaware; Vishay's headquarters were in Pennsylvania, while those of Siliconix were in Santa Clara County.

In 1998 Vishay acquired 80.4 percent of Siliconix from Daimler-Benz through its subsidiary, Vishay TEMIC Semiconductor Acquisition Holdings Corporation (Vishay TEMIC). In February 2001 Vishay made a cash tender offer for the remaining shares of Siliconix at $28.82 per share. That offer was rejected. On August 12, 2002, plaintiffs filed the instant action against Vishay, Vishay TEMIC, Siliconix, Vishay's chief executive officer, and E & Y. Their original complaint asserted (1) a shareholder derivative claim for breach of fiduciary duty and waste of corporate assets and (2) a class action for breach of fiduciary duty to two classes of minority shareholders. (See *Proctor v. Vishay Intertechnology Inc.* (9th Cir. 2009) 584 F.3d 1208, 1214.)

In January 2005 plaintiffs filed a first amended complaint, which contained more details of Vishay's alleged unlawful conduct. (*Proctor v. Vishay Intertechnology Inc., supra,* 584 F.3d 1208.) Two months later Vishay announced a tender offer for the remaining 19.6 percent of Siliconix stock.

This time it proposed an exchange of 2.64 shares of Vishay common stock for each share of Siliconix stock, followed by a short-form merger. The announcement was challenged in several class action shareholder suits against Vishay in the Delaware Court of Chancery. On April 18, 2005, these actions were consolidated in a first amended complaint in the Delaware court, essentially alleging that the tender offer was unfair and that Vishay had breached its fiduciary duties to the minority shareholders through inadequate disclosures and material omissions. Plaintiffs' counsel represented this pleading as having been *"copied almost entirely"* from the allegations of the January 2005 first amended complaint in the California action.

On April 20, 2005, the parties in the Delaware litigation reached "an agreement in principle, subject to additional discovery," consisting of Vishay's increase of the offered exchange to 3.075 Vishay shares for each Siliconix share. On April 28 they settled the action with a memorandum of understanding (MOU) reflecting the increased exchange ratio and supplemental disclosures to be made by Vishay.

When the tender offer expired on May 12, 2005, Vishay had obtained approval from enough shareholders to give it 95.5 percent of Siliconix common stock. Four days later it announced that it had accomplished the planned short-form merger, thus converting Siliconix into a wholly owned subsidiary of Vishay.

The final settlement agreement was filed with the Delaware Court of Chancery in September 2005. The document stated, "In consideration for the settlement and dismissal with prejudice of the Action and releases provided herein, (a) Vishay increased the exchange ratio in the Tender Offer and Short-Form Merger . . . to 3.075 Vishay shares for each share of Siliconix common stock and (b) Vishay has made supplemental disclosures (the 'Supplemental Disclosures') in connection with the Tender Offer and Short-Form Merger to address certain of the disclosure claims raised in the Action. The Supplemental Disclosures that were required by the terms and negotiations of the MOU were contained in an amended S-4 filed on April 25, 2005." The agreement further contained a broad release which expressly contemplated inclusion of "claims that Plaintiffs, on behalf of the Class, do not know or suspect to exist at the time of the release, which, if known, might have affected the Plaintiffs' decision to enter into this release. Plaintiffs and each member of the Class shall be deemed to waive any and all provisions, rights and benefits conferred by any law of the United States or any state or territory of the United States, or principle of common law, which governs or limits a person's release of unknown claims. Plaintiffs, on behalf of the Class, shall be deemed to relinquish, to the full extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code

[and] any law . . . comparable or equivalent to California Civil Code § 1542. Plaintiffs, on behalf of the Class, acknowledge that members of the Class may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention, on behalf of the Class, to fully, finally and forever settle and release any and all claims released hereby, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of such additional or different facts." Finally, the settlement specified that it would be governed and construed in accordance with Delaware law, and that any dispute arising out of the settlement would be litigated in the Delaware Chancery Court.

In its order scheduling the settlement approval hearing, the chancery court ordered Vishay to issue notice to all class members and warned, "Any person who fails to object in the manner described above shall be deemed to have waived the right to object (including any right of appeal) and shall be forever barred from raising such objection in this or any other action or proceeding, unless the Court orders otherwise."

In its settlement order on October 25, 2005, the chancery court found that adequate notice had been given to the class and all parties had had the opportunity to be heard. The court approved the settlement, including the Civil Code section 1542 waiver, finding the settlement "fair, reasonable and adequate and in the best interests of the Class." With the sole exceptions directed at claims to enforce settlement or for statutory appraisal, the court then released all pending and future claims related to the merger, reserved jurisdiction "over all matters relating to the administration and consummation of the Settlement," and dismissed the action with prejudice.[1] No party appealed from the October 25, 2005 judgment.

Meanwhile, however, proceedings continued in California. Both the Vishay defendants and E & Y demurred to plaintiffs' first amended complaint, and in

---

[1] The settlement order in comprehensive detail released the parties from "[a]ny known or unknown claims that have been, could have been, or in the future can or might be asserted in any court, tribunal or proceeding (including but not limited to any claims arising under federal, state, foreign or common law, including the federal securities laws and any state disclosure law), by or on behalf of any member of the class . . . which have arisen, arise now or hereafter may arise out of or relate in any manner to the allegations, facts, events, transactions, acts, occurrences, statements, representations, omissions or any other matter whatsoever set forth in or otherwise related, directly or indirectly to (i) the allegations in the complaints in the Action, (ii) the Tender Offer . . . (iii) the Short-Form Merger, or (iv) the fiduciary obligations or disclosure duties of any of the Released Persons in connection with the Tender Offer or Short-Form Merger, but excluding any claims to enforce the Settlement or any claims by Siliconix stockholders for appraisal pursuant to 8 Del C. § 262 . . . ."

September 2005 the court sustained those demurrers with leave to amend. Plaintiffs filed their second amended complaint on November 21, 2005. This pleading alleged three causes of action: a shareholder derivative claim for breach of fiduciary duty and corporate waste; a class action claim of breach of fiduciary duty; and a new cause of action, quasi-appraisal of shares. This pleading again met with a demurrer, but this time the court overruled the demurrer of the Vishay defendants, finding it facially inadequate and legally insufficient in the face of allegations of "enrichment by the majority shareholder at the expense of the minority." The court commented that as the case developed, "perhaps on summary judgment or some other basis," the court might agree with Vishay's position, but the face of the current pleadings did not permit such an outcome. Only E & Y's demurrer was sustained, again with leave to amend, in the ensuing May 8, 2006 order.

Shortly thereafter, the Vishay defendants returned to the Delaware court, moving for a permanent injunction to enforce the final judgment and settlement. The motion asserted that the Delaware court had jurisdiction over the California plaintiffs, that the current California pleading (the second amended complaint) contained the same allegations as those resolved in the Delaware settlement and judgment, and that plaintiffs, having failed to object to that judgment, should be barred from relitigating the same issues in California. The Vishay defendants further argued that both causes of action were properly characterized as derivative claims, and that since the merger, plaintiffs lacked standing to bring a derivative claim on behalf of Siliconix.

Plaintiffs' attorney informed defendants that they would not be responding to the motion for an injunction in Delaware. Accordingly, on June 13, 2006, the chancery court filed its order enjoining plaintiffs from pursuing any litigation in any other court, including the present action in the California superior court. The Delaware judge specifically found that the settlement and release in its October 2005 judgment, from which no one had appealed,[2] encompassed all the claims in the California proceeding.

That same day, the parties appeared for a case management conference before the Honorable Jack Komar, who had presided over the previous demurrers. Plaintiffs admitted that they had chosen not to appear in the Delaware court, "simply because there are issues that were not decided by the

---

[2] In a separate statement the court commented that its injunction was "clearly justified and it is regrettable that a motion of this kind had to be presented. Moreover, none of the parties in the pending California litigation has bothered to appear, despite adequate notice of their opportunity to do so." One of the class members had recently come forward to indicate his "intention" to oppose the motion "at some later date," but the Delaware judge deemed it "too little too late." That plaintiff then sought review of the injunction in the Delaware Supreme Court, but the appeal was dismissed for lack of standing. (*Fitzgerald v. Vishay Intertechnology Inc.* (Del. 2007) 918 A.2d 1170.)

Delaware court." They contended that the Delaware court had had no jurisdiction to enter the injunction. Judge Komar, however, emphasized that he could not decide whether plaintiffs had been properly enjoined, and he advised plaintiffs to return to Delaware to seek relief from the order there. To give plaintiffs that opportunity Judge Komar continued the California proceeding for two months.

The parties entered yet a third forum on June 30, 2006, when E & Y removed the action to federal court. E & Y then moved to dismiss the action, and Vishay moved for summary judgment. The district court, citing "federal-state comity," dismissed the action in July 2007, but the Ninth Circuit Court of Appeals partially overturned the order. That court held that the class action claim for breach of fiduciary duty (the second cause of action) was precluded by the Securities Litigation Uniform Standards Act of 1998 (Pub.L. No. 105-353, Nov. 3, 1998, 112 Stat. 3227), but the remaining two claims should have been remanded to the California court. (*Proctor v. Vishay Intertechnology Inc., supra*, 584 F.3d 1208.) The appeals court stated that while the Delaware settlement "may have a preclusive effect" on the federal action, the Delaware court could not "enforce that preclusive effect via an injunction that reaches out to constrain the workings of the federal court." (*Id.* at p. 1229.) The appellate court then directed the district court to send the case back to the California court to determine whether the Delaware settlement bars the first and third causes of action.

Plaintiffs filed a third amended complaint in the California action on September 9, 2010. They eliminated the previous class action claim for breach of fiduciary duty but again asserted a shareholder derivative claim (against all defendants) and quasi-appraisal of shares (against the Vishay defendants). On October 13, 2010, defendants demurred again. Relying on the Delaware court's injunction, they asserted the bar of res judicata.

The demurrers were heard by the Honorable James P. Kleinberg on January 28, 2011. The court ruled that collateral estoppel barred plaintiffs' causes of action. Even the third claim for quasi-appraisal was included in the Delaware injunction, which was "a final judgment on the merits of the appropriateness of equitable relief." Although the release itself had excluded shareholder claims for appraisal under Delaware law (8 Del. Code, § 262), "any purported error by the Delaware Court of Chancery in determining the scope of its injunction should have been brought to that court's attention." Judge Kleinberg further rejected plaintiffs' argument that the quasi-appraisal claim had not been "actually litigated" because class counsel had declined to take a position on the motion for an injunction; it was " 'the *opportunity to litigate* that is important in these cases, not whether the litigant availed himself or herself of the opportunity.' "

The order sustaining the demurrers allowed plaintiffs 20 days to amend. Plaintiffs filed their fourth amended complaint on March 9, 2011. In this pleading they specifically alleged that the Delaware settlement and judgment had "excluded explicitly" two kinds of claims: "(1) Claims that did not arise out of the allegations in the Delaware action, the 2005 Tender Offer and Short-Form Merger between Vishay and Siliconix and fiduciary or disclosure obligations in connection with these; and (2) 'any claims by Siliconix stockholders for appraisal pursuant to 8 *Del. C.* § 262.' " Plaintiffs also noted the exclusion of claims to enforce the settlement. All three kinds of claims, they alleged, were the subject matter of the third and fourth amended complaints, and res judicata did not bar them. Plaintiff reviewed the history of the proceedings in California and the federal courts, notably those in which Judge Komar had rejected defendants' attacks on earlier pleadings.

The matter was again heard by Judge Kleinberg, who agreed with defendants that the fourth amended complaint had added only legal argument to their previous pleading. The court rejected plaintiffs' assertions of judicial estoppel, law of the case, due process, extrinsic fraud, and lack of subject matter jurisdiction by the Delaware Chancery Court. The court reaffirmed its previous application of collateral estoppel to the Delaware judgment, again noting that plaintiffs had had "a reasonable opportunity to object to the terms of the settlement, but apparently chose not to do so. They cannot relitigate the fairness of the settlement now, in another state court, after the Delaware [j]udgment has become final." On July 26, 2011, the court entered judgment for defendants, followed by plaintiffs' timely appeal.

## Discussion

On appeal, plaintiffs contend that the chancery court's injunction was "void" because that court "vastly exceeded its subject matter jurisdiction." Consequently, according to plaintiffs, "it was reversible error for the California Superior Court to afford it Full Faith and Credit without at least considering whether the Chancery Court was correct on the merits (it was not)." In plaintiffs' view, Judge Kleinberg should have followed Judge Komar, who "held" that the California case was not included in the Delaware settlement and judgment. Plaintiffs further represent Judge Komar as having "held" that the chancery court's action was "extraordinary, and the California court was not bound by it." They also represent the Ninth Circuit Court of Appeals as having "reaffirmed" Judge Komar's "holdings" in its opinion, which "is now law of the case." Accordingly, plaintiffs argue that "[b]ecause the Superior Court did not have to afford the Delaware Injunction Full Faith and Credit, Judge Komar's initial rulings must apply, and the case should proceed on its merits like [*sic*] it should have over five years ago."

Plaintiffs' argument can be broken down into two related components. As a general policy, they urge, courts should neither issue nor enforce antisuit injunctions except in "extreme" circumstances, and a foreign state's antisuit injunction should not be given full faith and credit. This injunction in particular was beyond the subject matter jurisdiction of the Delaware court and therefore was "subject to collateral attack at any time." Accordingly, plaintiffs argue, the Delaware court's injunction should be disregarded in favor of Judge Komar's ruling, which was "the first, and therefore, controlling ruling on the issue of whether Plaintiffs' claims were covered by the 2005 Delaware Settlement and Judgment." Turning to the merits, plaintiffs contend that the Delaware injunction should not have been enforced here because the quasi-appraisal claim was outside the scope of the 2005 settlement and judgment.

■ Article IV, section 1, of the United States Constitution requires each state to accord full faith and credit "to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." This provision "does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.' [Citations.] Regarding judgments, however, the full faith and credit obligation is exacting. A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land. For claim and issue preclusion (res judicata) purposes, in other words, the judgment of the rendering State gains nationwide force." (*Baker v. General Motors Corp.* (1998) 522 U.S. 222, 232–233 [139 L.Ed.2d 580, 118 S.Ct. 657], fn. omitted (*Baker*).)

■ There can be no question that the Delaware court had "adjudicatory authority" over both the parties and the subject matter before it. Although plaintiffs at one point claim that the Delaware injunction was "void" because the court *lacked* subject matter jurisdiction, they subsequently explain that the court of chancery *exceeded* its subject matter jurisdiction. As we have observed before, "[a] judgment is void if the court rendering it lacked subject matter jurisdiction or jurisdiction over the parties. Subject matter jurisdiction 'relates to the inherent authority of the court involved to deal with the case or matter before it.' [Citation.] Lack of jurisdiction in this 'fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.]" (*Carlson v. Eassa* (1997) 54 Cal.App.4th 684, 691 [62 Cal.Rptr.2d 884].) A judicial act in *excess* of fundamental jurisdiction, however, " 'is not void, *but only voidable.* [Citations.] In contrast to cases involving other types of jurisdictional defects, a party may be precluded from challenging action in excess of a court's jurisdiction when the circumstances warrant applying

principles of estoppel, disfavor of collateral attack or res judicata. [Citation.]' " (*Pajaro Valley Water Management Agency v. McGrath* (2005) 128 Cal.App.4th 1093, 1101 [27 Cal.Rptr.3d 741].)

■ This distinction between judicial acts without jurisdiction and those in excess of jurisdiction forecloses plaintiffs' argument that the Delaware court's ruling is void. The essence of plaintiffs' position is that the court erred in issuing the injunction and in determining the scope of the 2005 settlement and judgment. In neither of these rulings, however, did the Delaware court lack the fundamental authority to act. If the Delaware court only *exceeded* its jurisdiction by ruling incorrectly that the quasi-appraisal claim was encompassed in the settlement, that error does not preclude the application of collateral estoppel, for "collateral estoppel may apply even where the issue was wrongly decided in the first action." (*Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 407 [78 Cal.Rptr.3d 784]; cf. *Panos v. Great Western Packing Co.* (1943) 21 Cal.2d 636, 640 [134 P.2d 242] ["An erroneous judgment is as conclusive as a correct one."].) ■ " 'In passing upon the plea of *res judicata*, the question is not whether a court decided the point involved right or wrong [*sic*] . . . the question is, Did the court decide the point and is the decision final?' [Citation.] By failing to appeal and seek a correction of the error through a reversal of the judgment, it is as conclusive upon the plaintiff as if at the trial he had omitted to present sufficient evidence to the court in support of his demand." (*Lamb v. Wahlenmaier* (1904) 144 Cal. 91, 95 [77 P. 765].)

In light of these principles, the Delaware court's subject matter jurisdiction is beyond dispute. The October 25, 2005 order clearly reserved jurisdiction "over all matters relating to the administration and consummation of the Settlement." Even Judge Komar, who plaintiffs believe regarded their position with approval, expressly refused to make that determination; instead, he urged plaintiffs to take up the propriety of the injunction with the Delaware courts. Plaintiffs offer no support for the premise that the Delaware court was somehow stripped of either its reserved jurisdiction or its inherent authority to determine the scope of its own prior ruling. (Cf. *Butler v. Grant* (1998) 714 A.2d 747, 753, fn. 31 [citing "well-settled Delaware law" that a court has inherent and continuing jurisdiction to enforce its own order]; *Lindh v. Randolph* (Del., May 4, 1987, No. 310, 1966) 1987 WL 36087, p. *2 [table, 525 A.2d 1013] ["Courts have inherent and continuing jurisdiction to enforce their own orders . . . ."].)

Plaintiffs point to a discussion in *Baker, supra*, 522 U.S. 222, in which the United States Supreme Court cited decisions refusing to allow an anti-suit injunction to preclude litigation in another state. Yet, as plaintiffs concede, the court in *Baker* did not hold that one state *cannot* bar litigation in

another; its comments were directed at the impermissibility of a state court's effort to constrain the decisions of the *federal* courts, and it noted the tendency of state courts not to allow antisuit injunctions to dictate their own rulings. (*Id.* at p. 236, fn. 9; cf. *Donovan v. City of Dallas* (1964) 377 U.S. 408, 413 [12 L.Ed.2d 409, 84 S.Ct. 1579] ["state courts are completely without power to restrain federal-court proceedings in in personam actions" (italics omitted)].)

▮ The California decisions plaintiffs cite do not instruct otherwise. Plaintiffs remind us that the remedy of the antisuit injunction should be used sparingly, only in exceptional circumstances. (See, e.g., *Advanced Bionics Corp. v. Medtronic, Inc.* (2002) 29 Cal.4th 697, 705–708 [128 Cal.Rptr.2d 172, 59 P.3d 231].) But that principle is applicable to a court that is considering whether to issue such a restraint, not the court that must decide whether to honor it. For just that reason, any opposition to the antisuit injunction issued in Delaware should have been raised in the Delaware court. Plaintiffs did not take any such action.

▮ In any event, no authority plaintiffs cite precludes a second court from finding the issues determined in the foreign court's decision to be res judicata. Plaintiffs insist that full faith and credit had to be justified before collateral estoppel could apply, as the two principles are "inextricably linked." Their argument misses the mark. It was not necessary for Judge Kleinberg to accord full faith and credit to the *entire* judgment of the foreign court before determining that one issue was subject to collateral estoppel. We agree with plaintiffs that the purposes and the policies of the two doctrines are related; courts often speak of applying full faith and credit to a sister state's judgment in order to implement res judicata principles. "[R]es judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system." (*Allen v. McCurry* (1980) 449 U.S. 90, 95–96 [66 L.Ed.2d 308, 101 S.Ct. 411]; see *Tyus v. Tyus* (1984) 160 Cal.App.3d 789, 792 [206 Cal.Rptr. 817] [regarding claim and issue preclusion as a matter of full faith and credit]; accord, *In re Forchion* (2011) 198 Cal.App.4th 1284, 1314 [130 Cal.Rptr.3d 690].) Yet the two doctrines are not interdependent in either purpose or application. The full faith and credit clause serves as "a nationally unifying force. It altered the status of the several states as independent foreign sovereignties, each free to ignore rights and obligations created under the laws or established by the judicial proceedings of the others, by making each an integral part of a single nation, in which rights judicially established in any part are given nation-wide application." (*Magnolia Petroleum Co. v. Hunt* (1943) 320 U.S. 430, 439 [88 L.Ed. 149, 64 S.Ct. 208].) Collateral estoppel, as plaintiffs themselves observe, is inherently "an equitable concept based on fundamental principles of fairness." (*Sandoval v. Superior Court* (1983) 140

Cal.App.3d 932, 941 [190 Cal.Rptr. 29].) "Collateral estoppel (like the narrower 'claim preclusion' aspect of res judicata) is intended to preserve the integrity of the judicial system, promote judicial economy, and protect litigants from harassment by vexatious litigation." (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 829 [88 Cal.Rptr.2d 366, 982 P.2d 229].) "As [the United States Supreme Court] and other courts have often recognized, res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." (*Allen v. McCurry, supra,* 449 U.S. at p. 94.)

Accordingly, whether or not it was proper to defer to the Delaware *injunction* against pursuing the action in California, Judge Kleinberg retained complete authority to determine whether collateral estoppel applied to the *issues* resolved in the chancery court. He recognized that very distinction in emphasizing that "the Delaware Injunction does not directly operate on this court. . . . It is the collateral estoppel effect of the issues adjudicated by the Delaware Court of Chancery on the Vishay Defendants' motion for permanent injunction (and not submission to the injunction itself) that compels the ruling herein." Thus, the focus of the superior court's ruling was whether to accord preclusive effect to the Delaware court's finding that the quasi-appraisal cause of action was within the scope of the October 2005 settlement and judgment. The answer to this question, not the propriety of the antisuit injunction itself, ultimately determines the success of plaintiffs' appeal.

■ "Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. [Citation.] Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223], fn. omitted; see *Gikas v. Zolin* (1993) 6 Cal.4th 841, 848 [25 Cal.Rptr.2d 500, 863 P.2d 745].)

■ Plaintiffs do not address these elements in their opening brief; they implicitly concede that they are all present and instead point out that even where the doctrine applies, the second court may adjudicate the issue if, as here, "a valid final judgment was never reached." As discussed above, however, the premise of this argument is faulty, as plaintiffs have not shown that either that the chancery court lacked subject matter jurisdiction or that its

judgment was not final.[3] Plaintiffs having pointed to no error in finding collateral estoppel applicable, we agree with Judge Kleinberg that the doctrine precludes relitigation of the issue of whether quasi-appraisal was encompassed in the 2005 settlement and judgment. This issue clearly was "actually litigated" in the injunction proceedings,[4] and it was necessarily decided on the merits in a judgment that plaintiffs implicitly concede was final under Delaware law.

In their reply brief, however, plaintiffs raise an additional argument for the first time: that California and Delaware law differ in whether a default judgment can satisfy the "actually litigated" element of collateral estoppel. Defendants respond by asking us to strike or disregard this contention as waived. Defendants point out that in opposing the demurrer below, plaintiffs themselves acknowledged that "the Delaware Injunction *is* entitled to collateral estoppel to the extent that it is within the subject matter jurisdiction of the Delaware court." Plaintiffs also conceded that "the *opportunity to litigate*" (rather than actual litigation) is important; but without jurisdiction, they emphasized, a default judgment was void. Plaintiffs addressed the issue of collateral estoppel as a discretionary decision which turned on "a host of factual issues that Defendants ha[d] not even attempted to establish." They cited only California law.

Likewise, in their opening brief on appeal, plaintiffs relied on California authority in setting forth the elements of collateral estoppel. As noted above, they did not even discuss the elements of the doctrine, but instead reasoned that because the injunction was not entitled to full faith and credit, it must yield to the earlier ruling of Judge Komar.[5]

■ As we have held on repeated occasions, " ' "Obvious considerations of fairness in argument demand that the appellant present all of his points in the opening brief. To withhold a point until the closing brief would deprive the respondent of his opportunity to answer it or require the effort and delay of an additional brief by permission. Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." ' [Citation.] [¶] The California Supreme Court long ago expressed its hostility to the practice of raising new issues in an appellate reply brief. 'Some additional points are made for the

---

[3] Plaintiffs indirectly suggest, through circular reasoning, that the Delaware injunction was not a final judgment. What they actually state is that it is not a final judgment "that California is bound by"; in other words, it is "not a *valid* final judgment."

[4] "For purposes of collateral estoppel, an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding." (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511 [94 Cal.Rptr.3d 1, 207 P.3d 506].)

[5] Plaintiffs avoid acknowledging that Judge Komar's overruling of the demurrer to the second amended complaint was not a final judgment.

first time in their closing brief. We are not disposed to look with favor upon a point so made, unless good reason appears for the failure to make it in the opening brief. This practice is not fair to a respondent, and tends to delay the final disposition of appeals. This court has heretofore said, that while it is undoubtedly at liberty to decide a case upon any points that its proper disposition may seem to require, whether taken by counsel or not, an appellant should, under the rules, make the points on which he relies in his opening brief, and not reserve them for his reply, and that the court may properly consider them as waived unless so made. [Citations.] This should undoubtedly be the rule where no good reason appears for the omission to make the point in the opening brief, and it does not appear that the appellant would be unjustly affected by a refusal to consider it.' [Citation.]" (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–765 [60 Cal.Rptr.2d 770].) In this case, plaintiffs not only failed to present the issue in their opening brief, but failed to argue the point below. Plaintiffs have forfeited the issue.

■ We are unconvinced by plaintiffs' new position in any event. Delaware is not so different from California in its approach to issue preclusion. "The rule of collateral estoppel is a rule of repose designed to end litigation. [Citation.] Among its worthy purposes is the avoidance of conflicting judicial determinations upon the same facts in different cases between the same parties." (*Tyndall v. Tyndall* (Del. 1968) 238 A.2d 343, 346.) "The doctrine may be asserted to prevent either party from relitigating an issue already decided after a full and fair hearing on the merits." (*A.M. v. G.L.* (Del. Fam. Ct., July 22, 2012, No. 11-08-14TN) 2012 WL 4861190, p. *2.)

If it is indeed Delaware law rather than California law that informs the proper collateral estoppel analysis, we derive more guidance on Delaware procedural policy from *Betts v. Townsends, Inc.* (Del. 2000) 765 A.2d 531, 534 and *Bailey v. City of Wilmington* (Del. 2001) 766 A.2d 477, 481. In *Betts*, the Delaware Supreme Court explained: "To determine whether collateral estoppel applies to bar consideration of an issue, a court must determine whether: '(1) The issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a *full and fair opportunity to litigate the issue in the prior action*.' " (*Id.* at p. 535, italics added; see *M.G. Bancorporation, Inc. v. Le Beau* (Del. 1999) 737 A.2d 513, 520 [application of collateral estoppel "requires that (1) a question of fact essential to the judgment (2) be litigated and (3) determined (4) by a valid and final judgment"].)

Decisions issued after those cited by plaintiffs have been consistent with *Betts* in finding collateral estoppel to bar a party from relitigating an issue if

he or she had a "full and fair opportunity" to litigate it in the prior action, not that it must have been actually litigated by that party. (See, e.g., *Troy Corp. v. Schoon* (Del.Ch. 2008) 959 A.2d 1130, 1134–1135 [plaintiff had a "full and fair opportunity" to litigate current allegations in prior "summary proceeding"]; *Oakes v. Oakes* (Del., Feb. 16, 2011, No. 709, 2010) 2011 WL 537574, p. *2 [table, 15 A.3d 217] [same]; *A.M. v. G.L., supra*, 2012 WL 4861190 at p. *2 [father had a " 'full and fair opportunity to litigate' " issue resolved in guardianship proceeding].) In that respect Delaware authority is in line with California, where " '[i]t is the *opportunity to litigate* that is important in these cases, not whether the litigant availed himself or herself of the opportunity.' " (*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 869 [114 Cal.Rptr.3d 241, 237 P.3d 565].)

Unquestionably in this case, plaintiffs had a full and fair opportunity to litigate the issues presented in the injunction motion but *expressly* chose to "take no position" on the motion. The chancery court then conducted a "full and fair hearing on the merits" on the issue of the viability of the quasi-appraisal claim. (*A.M. v. G.L., supra*, 2012 WL 4861190 at p. *2.) That plaintiffs elected to allow the injunction to be entered and become final did not entitle them to resurrect the issue in another state. The Delaware cases cited by plaintiffs are procedurally and factually distinct. In none of them did a party announce his or her acquiescence in the first judgment, elect not to appeal, and then challenge that same point in another forum afterward. All of the cited cases involved default judgments in which there was not only no opposition, but no adjudication of the issue that was later disputed in the second proceeding.[6]

█ We thus conclude that collateral estoppel, whether analyzed under California or Delaware principles, was properly applied to bar relitigation of the issue determined by the chancery court regarding the reach of its prior judgment. Nor do we see any due process violation in the court's 2006 ruling; plaintiffs were given notice of both the injunction proceedings and defendants' objective in bringing the motion. In light of this conclusion, it is unnecessary to weigh in on the merits of the parties' debate over the scope of the October 2005 settlement and judgment. Even if we disagreed with the chancery court's finding that its prior judgment encompassed the quasi-appraisal claim, the policies intrinsic to res judicata—fairness, avoidance of vexatious litigation, judicial economy, and interstate comity—supported the superior court's order sustaining defendants' demurrers without leave to amend.

---

[6] In light of the preceding discussion, defendants' motion to strike portions of plaintiffs' reply brief is denied.

*Disposition*

The judgment is affirmed.

Bamattre-Manoukian, J., and Márquez, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 12, 2013, S209693.