Filed 12/11/13  Global Swift Funding v. Bank of America CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| GLOBAL SWIFT FUNDING LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> BANK OF AMERICA CORPORATION, <br><br> Defendant and Respondent. | H038712 <br> (Santa Clara County <br> Super. Ct. No. 109CV145993) |

Plaintiff Global Swift Funding LLC appeals from a judgment entered after a grant of summary judgment to respondent Bank of America Corporation.  Plaintiff brought this action when respondent released funds to Net Courier Services, Inc. (Net Courier), the defendant in plaintiff's underlying lawsuit, contrary to a stipulated order.  On appeal, plaintiff challenges the trial court's conclusion that plaintiff suffered no damages when respondent mistakenly released those funds because the error was subsequently remedied to plaintiff's advantage.  We find no error and therefore must affirm the judgment.

## Background

In 2008 plaintiff pursued an action against Net Courier, which culminated in a 2009 stipulated judgment against Net Courier for $477,701.88, including costs.  The judgment was to be paid in specified installments from December 15, 2008 until satisfied in full.  An order in December 2008, also entered by stipulation, directed respondent's branch in Half Moon Bay and another branch in San Jose to release the funds in Net

Courier's accounts, which totaled $168,037.92, to the sheriff of each county. The sheriff was then to distribute half of the proceeds of each levied amount to Net Courier and half to plaintiff. Thus, plaintiff was to receive $84,018.96 from the disbursement.

At the Half Moon Bay branch, however, a bank employee released the entire $68,315.20 in that account directly to Net Courier instead of to the sheriff of San Mateo County. The bank employee's manager, upon discovering the error at the end of December, overdrew the account, hoping that Net Courier would replace the funds, but it did not; instead, it transferred the money to accounts outside respondent's reach.

To remedy the deficiency, plaintiff obtained an ex parte order on January 12, 2009, directing the release of *all* the remaining funds at either branch to the sheriff and then to plaintiff. Respondent then issued two checks to the Santa Clara County sheriff from the San Jose branch: one for $19, 396.73 and one for $80,325.99. Plaintiff thus recovered $99,722.72 – more than the amount initially ordered.

By January 30, 2009, respondent's management decided to "wait and see what happens." Thus, no further action was taken until mid-April of 2009, when plaintiff's attorney contacted respondent. At that point respondent did not release any more money to plaintiff because it had already disbursed the remaining funds pursuant to the court's second (January 12, 2009) order.

Plaintiff initiated this action on June 29, 2009, seeking "the approximate amount of $99,000" for respondent's "failure to maintain control over the attached funds." Plaintiff did not assert a specific cause of action, but only alleged the violation of Code of Civil Procedure section 488.455, subdivision (c), in failing to maintain control over the attached funds.[1]

---

[1] At the time these events occurred, Code of Civil Procedure section 488.455 provided: "During the time the attachment lien is in effect, the financial institution shall not honor a check or other order for the payment of money drawn against, and shall not pay a withdrawal from, the deposit account that would reduce the deposit account to an amount

2

Both parties moved for summary judgment. At this point plaintiff no longer claimed entitlement to $99,000 but sought the $68,315.20 Net Courier had removed from the Half Moon Bay account.

In December 2010 the superior court granted respondent's motion on the ground that plaintiff had suffered no damages as the result of the bank employee's error. Plaintiff initially appealed from this order, but on December 22, 2011, this court dismissed the appeal, as it was taken from a nonappealable order with no judgment having ever been entered. (H036622) On August 8, 2012 the superior court denied plaintiff's summary judgment motion, and on the same day it entered a final judgment for respondent. Plaintiff then filed a timely notice of appeal.

### Discussion

Plaintiff's position on appeal comprises three arguments. First, plaintiff contends, it did suffer damage from respondent's release of the $68,315.20, because (a) "[a]t least half, and perhaps all," of that amount would have eventually been paid to plaintiff; and (b) it lost its control over the collection procedure it had set up to ensure regular payments of Net Courier's $477,701.88 debt. Plaintiff further argues, relying on the collateral source rule, that any benefit it received by accepting the $99,722.72 awarded in the subsequent ex parte order did not offset the loss of $68,315.20. Finally, plaintiff asserts that respondent's conduct after discovering its error constitutes contempt of court, because by adopting a "wait and see" approach respondent "intentionally" forced plaintiff to sue to recover the money it should have received in the first place. Plaintiff insists that "[s]uch conduct should not be left unaddressed"; the remedy, it implies, is reversal of the judgment so that it can recover its $68,315.20, plus interest.

---

that is less than the amount attached. For the purposes of this subdivision, in determining the amount of the deposit account, the financial institution shall not include the amount of items deposited to the credit of the deposit account that are in the process of being collected." (Former Code Civ. Proc., § 488.455.)

3

The resolution of the central issue, whether plaintiff suffered damage from respondent's violation of the court's December 19, 2008 order, depends on how the cause of the loss is properly viewed. Plaintiff takes a broad view: Had respondent not released the funds and then failed to "make good" on its employee's error, plaintiff would have been $68,315.20 closer to collecting the full amount of Net Courier's debt. Plaintiff emphasizes that it "was trying to recover on a $477,000 judgment."

Respondent, on the other hand, views the erroneous release as causing the loss of only the $68,315.20, which was remedied when it released the remaining $99,722.72 held in Net Courier's San Jose account pursuant to the January 12, 2009 ex parte order. Thus, by receiving more than the original amount allocated to it, plaintiff suffered no damage.

We find respondent's view more convincing. The release of the money to Net Courier constituted a violation of an order to pay plaintiff $84,018.96. The payment of $99,722.72 to plaintiff more than compensated plaintiff for *that* error. Plaintiff's anticipated inability to control the payments Net Courier owed in the future is speculative and irrelevant. The amount of Net Courier's total debt to plaintiff is also irrelevant to respondent's noncompliance with the December 19, 2008 order. Thus, we discern no error in the trial court's finding that plaintiff received a remedy for respondent's violation which exceeded the amount respondent had originally been directed to release. In light of this conclusion, we need not determine the outcome of the parties' debate over the applicability of the collateral source rule, as the offset provided by that doctrine is premised on the existence of damages.

In its reply brief, plaintiff adopts a new approach. Accusing respondent of misrepresenting the facts, plaintiff asserts that the true reason for the January 12, 2009 order was not respondent's error and resulting loss of $68,315.20, but Net Courier's default on its December 15, 2008 installment payment. That default, according to plaintiff, gave plaintiff the right to *all* the funds respondent was to send to the sheriff—i.e., $168,037.92.

Plaintiff finds support for this new theory in a January 12, 2009 declaration from Melissa Armstrong, plaintiff's attorney in its action against Net Courier. Plaintiff has asked this court to take judicial notice of -- and augment the record with -- that declaration. We decline to do either. Plaintiff never asserted its entitlement to the entire $168,037.92 in its complaint against respondent, in its motion for summary judgment, or in its opposition to respondent's summary judgment motion. As the Armstrong declaration was never presented to the trial court, it would be unfair to respondent for us to include it as new evidence on appeal. (See *Panopulos v. Maderis* (1956) 47 Cal.2d 337, 341 [party should not be required to defend new theory on appeal based on facts not presented at trial].) Likewise, the argument raised in plaintiff's reply brief, that Net Courier's default entitled plaintiff to the entire attached funds, was never presented to the trial court and is now arriving far too late to be considered at this stage. Reserving an argument and supporting evidence until the reply brief on appeal, without giving either the respondent or the trial court an opportunity to consider it, is both unfair and, in this case, unjustified. (See *Proctor v. Vishay Intertechnology, Inc.* (2013) 213 Cal.App.4th 1258, 1274 [argument in reply brief forfeited on appeal where plaintiffs failed not only to present the issue in their opening brief but to present it to trial court]; *Hibernia Sav. & Loan Society v. Farnham* (1908) 153 Cal. 578, 584 [reserving points for closing brief is "not fair to a respondent," and reviewing court "may properly consider them as waived"].) Consequently, we deny plaintiff's requests to take judicial notice and augment the record, and we grant respondent's motion to strike the reply brief to the extent that plaintiff raises new points based on the Armstrong declaration.

*Disposition*

The judgment is affirmed.

                                  _____

                                  ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.